# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WASHINGTON A SALGADO CAMPANA,<br>    Petitioner,<br><br>    v.<br><br>MICHAEL ROSE, in his official capacity as Acting Philadelphia Field Office Director for U.S. Immigration and Customs Enforcement, and<br>JAMAL L. JAMISON, in his official capacity as the Facility Administrator of the Philadelphia Federal Detention Center,<br>    Respondents. | CIVIL ACTION<br><br><br><br>NO. 26-199 |

## MEMORANDUM

**HODGE, J.**                                   **January 20, 2026**

    Petitioner Washington Armando Salgado Campana ("Petitioner" or "Mr. Salgado Campana") is yet another of the numerous individuals who have been recently detained by immigration authorities under the new decision by the Bureau of Immigration Appeals ("BIA"). BIA's interpretation of the Immigration and Nationality Act ("INA") § 235, 8 U.S.C. § 1225, would permit it to treat an immigrant as "seeking admission" who was not inspected upon arrival in the country even if they arrived in the country years ago. Such treatment results in detention without any hearing. This Court again joins with the hundreds of decisions rejecting BIA's analysis, and grants Mr. Salgado Campana's petition for a writ of habeas corpus (ECF No. 1) and orders his immediate release.[1]

---

[1] Respondents submit that this matter can be resolved on the briefs and without a hearing. (ECF No. 3 at 5 n.3.)

I.  **BACKGROUND**[2]

Respondents do not dispute the facts as stated in Mr. Salgado Campana's petition, and therefore the Court accepts them as true. (ECF No. 3 at 2.) Mr. Salgado Campana is a citizen of Ecuador. (ECF No. 1 ¶ 217.) On or about September 20, 2022, Mr. Salgado Campana entered the United States at the U.S./Mexico border without inspection. (*Id.* ¶ 2.) After his entry, he was apprehended by Customs and Border Patrol and subsequently released on parole. (*Id.* ¶ 3.) He thereafter timely applied for asylum. (*Id.*)

On January 10, 2026, Mr. Salgado Campana was walking on the street with his wife when he was arrested by Immigration and Customs Enforcement ("ICE"). (*Id.* ¶ 4.) Following Petitioner's arrest and transfer to the Philadelphia Federal Detention Center, ICE presumptively issued a custody determination to continue his detention without an opportunity to post bond or be released on other conditions. (*Id.* ¶ 40.)

II.  **LEGAL STANDARD**

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . ." The burden is on the petitioner to show that his confinement is unlawful. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

III.  **DISCUSSION**

Respondents argue this Court lacks jurisdiction to hear Mr. Salgado Campana's claims pursuant to 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii). (ECF No. 3 at 5–9.) However, as my colleagues and I have explained repeatedly in numerous similar opinions issued on the same issue that is now before this Court, none of these statutes are applicable to the instant Petition.

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

Indeed, as of December 16, 2025, there had been close to 300 decisions addressing the issues raised by Petitioner in this case in district courts across the country. *Garcia-Zamora v. Jamison*, No. 25-6656, 2025 WL 3642088, at *2 (E.D. Pa. Dec. 16, 2025). Almost all the cases nationwide, and all of this district's cases, have found jurisdiction to be proper and proceeded to rule on the merits in favor of the petitioner. *See Ambriev v. Rose*, No. 26-85, 2026 WL 92285 (E.D. Pa. Jan. 13, 2026); *Salinas Jaigua v. Jamison*, No. 25-7115, 2025 WL 3757076 (E.D. Pa. Dec. 29, 2025) (collecting cases). This Court again adopts the reasoning of those decisions.

The primary issue the parties dispute is whether mandatory detention pursuant to Section 1225(b)(2)(A) is unlawful where, as here, a noncitizen is already present in the United States. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding . . . ." By contrast, 8 U.S.C. § 1226(a) "applies to aliens already present in the United States," *Jennings v. Rodriquez*, 583 U.S. 281, 303 (2018), and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General "may release" noncitizens on "bond" or "conditional parole," except if they have committed any of the criminal offenses listed in Section 1226(c). 8 U.S.C. § 1226(a).

Reversing course, on July 8, 2025, the Department of Homeland Security ("DHS") issued a policy instructing all ICE employees to consider anyone deemed inadmissible under § 1182(a)(6)(A)(i)—*i.e.,* all those who entered the United States without admission or inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond. This policy was subsequently enshrined in a September 5, 2025

decision by BIA, which took the position that all non-citizens who are present in the United States without admission are subject to mandatory detention under Section 1225(b) and that an immigration judge has no authority to consider their bond requests. *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (B.I.A. 2025).

As the Supreme Court has explained, "aliens *already in the country* pending the outcome of removal proceedings" may be detained pursuant to Section 1226(a). *Jennings*, 583 U.S. at 289 (emphasis added). By contrast, Section 1225(b) "applies primarily to aliens seeking entry into the United States." *Id.* at 297. Respondents assert that Congress crafted the "applicants for admission" language of Section 1225(b)(2)(A) broadly to include noncitizens like Petitioner who are already present within the United States. (ECF No. 3 at 15.) However, as my colleagues have reasoned, if the Court accepts Respondents' argument that Section 1225(b)(2)(A) applies to all "applicant[s] for admission," then there was no need for Congress to specify that Section 1225(b)(2)(A) would apply to "alien[s] seeking admission." *Demirel v. Fed. Detention Center Phila.*, No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025). This Court must grant "every clause and word of a statute . . . meaning" and render "no clause, sentence, or word . . . superfluous, void, or insignificant." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). If this Court adopted the Government's reading of Section 1225(b)(2)(A) to apply to "all applicant[s] for admission," it would render the phrase "seeking admission" superfluous. However, the text "seeking admission" is not unnecessary and, thus, shall not be ignored by this Court.

Here, the parties do not dispute that Mr. Salgado Campana was already in the United States upon his detention on January 10, 2026. He was not actively "seeking admission." Rather, he had previously entered the country, applied for asylum, and resided here for over three years. There

4

are no facts presented to this Court that demonstrate a basis for his detention absent a hearing. I therefore again join my colleagues and hold that Section 1225(b)(2)(A) cannot apply to Mr. Salgado Campana. *See Salinas Jaigua*, 2025 WL 3757076 (collecting cases).

Respondents assert that Mr. Salgado Campana's detention comports with due process. (ECF No. 3 at 15–16.) This Court strongly disagrees. The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." The "Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test outlined in *Mathews v. Eldridge*, which weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the Government's interest, including administrative burdens of additional procedures. 424 U.S. 319, 334 (1976).

All three *Mathews* factors weigh in favor of Mr. Salgado Campana. In this instance, he has a strong private interest in his personal liberty. The failure of the Government to afford him *any* individualized determination regarding whether he posed a danger or flight risk poses a high risk of erroneous deprivation of his rights, while a bond hearing imposes minimal administrative burden. Respondents have set forth no facts suggesting he is more of a danger or flight risk now than when he was released by a border patrol official in 2022. To the contrary, since arriving in the United States, Mr. Salgado Campana has submitted an application for asylum and has no demonstrable criminal record, both of which indicate the opposite conclusion. Therefore, the application of the *Mathews* factors and constitutional due process necessitated a bond hearing prior

to his detention on January 10, 2026. Because that hearing did not occur, he should not be in custody now.

## IV.     CONCLUSION

For the aforementioned reasons, Petitioner's detention without a bond hearing offends the INA and the Due Process Clause of the Fifth Amendment. Therefore, this Court grants Petitioner's Petition, orders his immediate release, permanently enjoins the Government from re-detaining him under Section 1225(b)(2)(a), and temporarily enjoins the Government from re-detaining him under Section 1226(a) for seven days following his release. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**